***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Ledford.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Defendant-Employer was subject to the North Carolina Workers' Compensation Act on the alleged date of injury. *Page 2 
2. Zurich Insurance Company was the carrier on the risk on the alleged date of injury.
3. An employment relationship existed between Plaintiff-Employee and Defendant-Employer on the alleged date of injury.
4. The Industrial Commission has jurisdiction of this matter and venue is proper.
5. Plaintiff's pre-injury average weekly wage may be determined from a Form 22, to be submitted by Defendants.
6. The following exhibits were stipulated into evidence:
 A. Pre-Trial Agreement;
 B. Composite Exhibit titled "Current Medicals and Disability Rating";
 C. Composite Exhibit titled "Past Medicals";
 D. Medical records from Dr. Gretchen Hermanny;
 E. Transcript of Eddie Adkins' deposition of September 3, 2008;
 F. Transcript of Rose Price's deposition of September 3, 2008;
 G. Transcript of Dr. Hermanny's deposition of September 10, 2008.
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, Plaintiff was 68 years of age. Plaintiff has worked as a truck driver periodically for approximately 30 years. Plaintiff began working directly for Defendant-Employer in 2007. Defendant-Employer's terminal is located in Lebanon, Tennessee. *Page 3 
2. Prior to working for Defendant-Employer, Plaintiff had a long history of back problems dating back to 1989, when Plaintiff underwent a lumbar fusion at L4-5.
3. On February 8, 2003, Plaintiff injured his back while working for G P Trucking when he slipped and landed on his back while winding the landing gear on a trailer. G P Trucking accepted the claim as compensable. Plaintiff received temporary total disability benefits, medical treatment, and a settlement.
4. Plaintiff underwent a lumbar MRI on February 28, 2003, which revealed the presence of a disc protrusion on the left at L5-S1 and an osteophyte on the right at L4-5 which was causing slight compression of the right side of the thecal sac and perhaps extrinsic compression on the right L5 nerve root. Plaintiff remained under medical care for his back for over two years. Plaintiff testified that his back injury kept him out of work for two and one-half years.
5. As of January 26, 2005, Dr. Angus Graham, III noted that Plaintiff may benefit from exploration of his fusion and possible re-fusion as may be necessary. On May 9, 2005, Dr. Rhyne assessed Plaintiff with a three percent permanent impairment rating to his back. On October 7, 2005 Dr. Graham assessed Plaintiff with a twenty-five percent permanent impairment to his back. The parties settled the case for $15,000.00 paid to Plaintiff.
6. On or about June 23, 2007, Plaintiff was scheduled to drive to Cheyenne, Wyoming. Plaintiff testified that he injured his back on June 23, 2007 while hooking up a trailer to his truck at Defendant-Employer's terminal. Plaintiff testified that he attempted to crank the landing gear up on the trailer and slipped and fell directly onto his back. Plaintiff testified that he went to the front of the truck and called Eddie Adkins, the dispatcher, and advised him of the alleged incident and injury to his back. It was Plaintiff's testimony that he was in severe pain *Page 4 
following the alleged injury, but that he went on the four-day trip to Cheyenne because Mr. Adkins refused to allow him to seek medical treatment and told him that the load had to go to Cheyenne that day.
7. Eddie Atkins has been employed by Defendant-Employer as a dispatcher for six years. According to Mr. Adkins, on June 23, 2007, Plaintiff contacted him prior to leaving for Cheyenne, to advise that he was having difficulty raising the dolly legs on a trailer. Mr. Adkins went out to Plaintiff and cranked the dolly legs up for him. Mr. Atkins assisted Plaintiff particularly out of consideration for Plaintiff's age. During this encounter, Plaintiff did not report a back injury or mention back pain to Mr. Adkins. Plaintiff did not indicate that he could not drive to Cheyenne because of his back, but did advise Mr. Adkins that he was having heart problems, and that he would need to return home by a certain date for a doctor's appointment related to his heart. Mr. Atkins testified that he would never have insisted that Plaintiff drive to Cheyenne if Plaintiff had complained of back pain.
8. Rose Price has worked for Defendant-Employer since 2004 in customer service. In the course of her employment, Ms. Price regularly came into contact with Plaintiff and he would often discuss medical problems with Ms. Price, including chest pain. Ms. Price is often the point of first contact for injured drivers. Plaintiff never reported a back injury or complained of back problems to Ms. Price.
9. Ms. Price recalled the date when Mr. Adkins assisted Plaintiff with raising the dolly legs, and was of the impression it was due to chest pain. There was no mention of any back pain by Plaintiff to Ms. Price, and Mr. Adkins never told Ms. Price that Plaintiff had reported a back injury to him. Ms. Price testified that Mr. Adkins is a very honest and compassionate person and that he would have informed her if Plaintiff had reported an injury. *Page 5 
10. During the four-day trip to Cheyenne, Plaintiff did not seek any medical treatment, despite the fact that he was allegedly in extreme pain. Plaintiff spoke with Mr. Adkins at least five times during the trip on routine check-ins and never complained of back pain during any of these conversations. Plaintiff did express concern about his heart during these conversations. Near the end of the trip, Plaintiff indicated that he was growing more concerned about his heart and that he wanted to report home for evaluation. Plaintiff did not complain of any back pain during this conversation. Mr. Adkins subsequently spoke with Plaintiff four or five times after Plaintiff had returned home. Plaintiff never told Mr. Adkins that he was having back problems or that he had injured his back at work.
11. In weighing the testimony of Plaintiff against that of Mr. Adkins and Ms. Price, the undersigned give more credibility to the testimony of Mr. Adkins and Ms. Price, and their testimony is found to be fact in this case. Plaintiff's testimony that he fell and injured his back prior to leaving for the Cheyenne trip is not credible, particularly in light of his failure to report the same to his employer, his decision to make the long trip anyway, and the fact that he did not seek any medical attention for his back during the trip.
12. The greater weight of the evidence shows that Plaintiff did not sustain an injury by accident as alleged. Considering his extensive history of debilitating back problems and his allegation of extreme pain subsequent to the alleged injury, the undersigned find that Plaintiff would have sought immediate medical treatment and would not have gone on a four-day road trip if he had injured his back on June 23, 2007.
13. Plaintiff's credibility is also challenged by other inconsistencies. Plaintiff acknowledged that following his February 2003 back injury, he was out of work for two and one-half years and that he received temporary total disability compensation during this period. *Page 6 
According to Plaintiff's testimony, he would have been out of work until approximately July of 2005. On his employment application with the Defendant-employer dated November 14, 2006, Plaintiff indicated that he was employed by Smokey Mountain Trucking from 2001 to 2005, and by Rick Garren in Fletcher from 2005 through 2006. Plaintiff did not list G P Trucking, although he had been working there when injured in 2003. Plaintiff did not indicate his period of not working due to his back injury. The application would indicate that he had been continuously working as a truck driver. Plaintiff offered no explanation when asked to explain this discrepancy. Plaintiff was untruthful either when completing his employment application regarding his employment history and work experience, or at the hearing before the Deputy Commissioner regarding his inability to work for two and one-half years due to the back injury he sustained in 2003.
14. Dr. Gretchen Hermanny is a general practitioner and has treated Plaintiff since 2000. On June 29, 2007, Plaintiff presented to Dr. Hermanny with complaints that he had hurt his back on three or four occasions during the prior month while winding down the landing gear on trailers. This report of injury is inconsistent with Plaintiff's report of injury from falling as stated in his pleadings and at hearing.
15. On July 2, 2007, an MRI scan of the lumbar spine revealed degenerative disc disease at L1-4, compression of the right L4 nerve root due to degenerative changes and congenitally short pedicles, mild spinal canal stenosis on the right caused by degenerative changes at L4-5, and a left foraminal disc protrusion at L5-S1. This in combination with facet joint osteoarthritis, results in compression of the left L5 nerve root.
16. Dr. Hermanny testified that during Plaintiff's June 29, 2007 presentation, he reported that he was injured on June 23, 2007 when he fell under a truck, and that Plaintiff *Page 7 
indicated to her that he had reported the injury to Mr. Adkins. Dr. Hermanny based her testimony on an abstract which she referred to at deposition. Dr. Hermanny initially testified that the abstract was prepared using only information from her medical notes, and that Plaintiff had provided the information during evaluation on June 29, 2007. However, upon further questioning, and when it was called to her attention that her June 29, 2007 note had no reference to an injury on June 23, 2007, to Plaintiff's falling under a truck, or of a report to Mr. Atkins, Dr. Hermanny admitted that she prepared the abstract based on information provided by Plaintiff on August 18, 2008 in preparation for the deposition which was taken on September 10, 2008.
17. Dr. Hermanny assigned impairment ratings of twenty percent to Plaintiff's right foot, fifty percent to his right leg, and fifty percent to his back, each of which she attributed to Plaintiff's back condition and alleged injury. Dr. Hermanny initially testified that she consulted the North Carolina Industrial Commission Rating Guide when arriving at each of the ratings. When asked if there was any way she could describe how she arrived at the assigned ratings, Dr. Hermanny testified that she could not, and admitted that the ratings were purely subjective and that she did not use any type of guidelines or methodology when assigning the ratings.
18. With regard to Plaintiff's cardiac condition, Dr. Hermanny initially testified that Plaintiff had no cardiac problems subsequent to the 2004 bypass surgery. However, she subsequently admitted that Plaintiff had an echocardiogram in May of 2007. The medical evidence indicates that Dr. Hermanny discussed the results of the echocardiogram and prescribed nitrates during Plaintiff's June 29, 2007 presentation, and that a cardiac catheter was under consideration at that time.
19. Dr. Hermanny also disputed the radiologist's conclusion. Dr. Hermanny did not compare the 2003 and 2007 MRI films prior to deposition. The undersigned assign greater *Page 8 
weight to the opinion of the radiologist than to the opinion of Dr. Hermanny because Dr. Hermanny is not a specialist in orthopedics, neurology, or radiology and her testimony is not otherwise found to be competent.
20. Plaintiff has relied upon the testimony of Dr. Hermanny in support of his claim. However, for the reasons set out above, Dr. Hermanny's testimony is not competent on the issue of causation. Her opinions are based upon inconsistencies and Plaintiff's testimony, which in itself is not credible. For these reasons, Dr. Hermanny's opinion testimony is not accepted as competent to support the issue of medical causation in this case.
21. The greater weight of the evidence shows that Plaintiff did not sustain an injury by accident on June 23, 2007 and that Plaintiff's current back condition has not been established to have been caused by any accident or specific traumatic incident in his employment with Defendant-Employer.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSION OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment.Henry v. Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950). *Page 9 
2. Plaintiff has failed to prove by the greater weight of the credible and competent evidence that he sustained an injury by accident arising out of and in the course of his employment with Defendant-employer on or about June 23, 2007. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is hereby Denied.
2. Defendants shall pay the cost of the hearing and an expert witness fee of $745 to Dr. Gretchen Hermanny.
This the 8th day of October 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/_____________ LINDA CHEATHAM COMMISSIONER
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
 *Page 1